## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
| --- | --- |
| SHARLENE DESKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 18-3147 (RBW) |
| | ) |
| TOM VILSACK,[1] in his official | ) |
| capacity as Secretary of Agriculture, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| | ) |

## <u>MEMORANDUM OPINION</u>

The plaintiff, Sharlene Deskins, proceeding <u>pro se</u>, brings this civil action against the

defendant, Tom Vilsack, in his official capacity as Secretary of Agriculture, alleging violations

of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e <u>et seq.</u> ("Title VII"), and the

Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8).  <u>See</u> Amended Complaint ("Am. Compl.")

¶ 1, ECF No. 3.  Currently pending before the Court are the plaintiff's motion for summary

judgment, <u>see</u> Plaintiff's Motion for Summary Judgment and Brief in Support of Her Motion

("Pl.'s Mot." or the "plaintiff's motion"), ECF No. 69, and the defendant's cross-motion for

summary judgment, <u>see</u> Defendant's Cross-Motion for Summary Judgment ("Def.'s Mot." or the

"defendant's motion"), ECF No. 70.  Upon careful consideration of the parties' submissions,[2] the

---

[1] Tom Vilsack is the current Secretary of the United States Department of Agriculture, and he is therefore substituted for Sonny Perdue as the proper party defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Plaintiff's Statement of Undisputed Facts to Support her Motion for Summary Judgment filed in July 2021 ("Pl.'s Facts"), ECF No. 69-1; (2) the Defendant's Memorandum of Points and Authorities in Support of Defendant's Cross-Motion for Summary Judgment and Response in Opposition to Plaintiff's Motion for Summary Judgment ("Def.'s Mem."), ECF No. 70-1; (3) the Defendant's Statement of Undisputed Material Facts ("Def.'s Facts"), ECF No. 70-2; (4) the Defendant's Response to Plaintiff's Statement of Undisputed Material Facts ("Def.'s

(continued . . .)

Court concludes for the following reasons that it must deny the plaintiff's motion and grant the defendant's motion.

## I.   BACKGROUND

### A.   Factual Background

The plaintiff states that she is an "African American woman[,]" Am. Compl. ¶ 6; see Def.'s Facts ¶ 1, who worked as "a GS-15 Staff Attorney in [the] Office of [the] General Counsel (['']OGC[']) [for] the United States Department of Agriculture (['']USDA[' or the 'Agency']) . . . from 1990 until March 14, 2018[,]" Am. Compl. ¶ 6; see Def.'s Facts ¶¶ 2–3, 127; Pl.'s Opp'n at 120, ¶ 127.[3] From 2014 to 2018, "Mai [T.] Dinh, Assistant General Counsel, . . . [was the plaintiff's] first[-]line supervisor," Am. Compl. ¶ 19; see Pl.'s Facts ¶ 32; Def.'s Resp. to Pl.'s Facts ¶ 32, and "Carrie Ricci, Assistant General Counsel, . . . [was the plaintiff's] second-line supervisor[,]" Am. Compl. ¶ 19; see Pl.'s Facts ¶ 33; Def.'s Resp. to Pl.'s Facts ¶ 33, at the USDA.

### 1.   The Plaintiff's June 2015 Letter of Reprimand

On April 28, 2015, after the plaintiff repeatedly "raised discrimination claims with the [d]efendant starting in approximately June of 2013[,]" Pl.'s Facts ¶ 52; see Def.'s Resp. to Pl.'s Facts ¶ 52, "Ms. Dinh scheduled a meeting with [the p]laintiff for April 29, 2015, to discuss [the p]laintiff's bi-weekly report[,]" Def.'s Facts ¶ 10; see Pl.'s Opp'n at 18, ¶ 10.  The bi-weekly report was part of a system that Ms. Dinh instituted in 2015 "for all non-supervisory staff

---

Resp. to Pl.'s Facts"), ECF No. 70-3; (5) the Plaintiff's Opposition to the Defendant's Cross Motion for Summary Judgment ("Pl.'s Opp'n"), ECF No. 72; and (6) the defendant's Reply in Support of Defendant's Cross-Motion for Summary Judgment ("Def.'s Reply"), ECF No. 73.

[3] Although the plaintiff represents in her Amended Complaint that she was terminated on March 14, 2018, see Am. Compl. ¶ 6, both parties represent in there statements of facts that her termination was effective March 16, 2018, see Def.'s Facts ¶ 127; Pl.'s Opp'n at 120, ¶ 127.

attorneys[,]" Def.'s Facts ¶ 15; <u>see</u> Pl.'s Opp'n at 21, ¶ 15, in order to "track staff attorney[s']

work progress[,]" Def.'s Facts ¶ 16; <u>see</u> Pl.'s Opp'n at 21, ¶ 16, and track the "status of assigned

work, the next steps to accomplish the assigned work, and a target date to accomplish the

assigned work[,]" Def.'s Fact's ¶ 17; <u>see</u> Pl.'s Opp'n at 22, ¶ 17. "On April 29, 2015, [the

plaintiff] did not attend the meeting."  Def.'s Facts ¶ 11; <u>see</u> Pl.'s Opp'n at 18, ¶ 11.  The

plaintiff claims that she did not attend this meeting due to Ms. Dinh's "refus[al] to change the

day or time of the conference call" despite the plaintiff's request that "either the meeting be

postponed to a day when [her] union representative was physically in the building or that the

meeting be held through a telephone conference call that day."  Pl.'s Facts ¶ 51.

Subsequently, on May 12, 2015, "Ms. Dinh issued [the p]laintiff a Proposed Letter of

Reprimand for conduct unbecoming a federal employee" because "[the p]laintiff did not attend

the meeting on April 29, 2015."  Def.'s Facts ¶ 12; <u>see</u> Pl.'s Opp'n at 19, ¶ 12.  Also on May 12,

2015, the plaintiff "filed an Equal Employment Opportunity [("EEO")] complaint against Dinh

and the [d]efendant for discrimination based on her race, age[,] and gender."  Pl.'s Facts ¶ 52;

<u>see</u> Def.'s Resp. to Pl.'s Facts ¶ 52.  "On May 19, 2015, [the p]laintiff responded to the proposed

letter of reprimand[,]" Def.'s Facts ¶ 13; <u>see</u> Pl.'s Opp'n at 21, ¶ 13, stating that "her conduct

was not disrespectful, that she was entitled to exercise her Weingarten rights, and that the

proposed reprimand is retaliatory based on her opposition to discrimination and discriminatory

based on her race[,]" Def.'s Mot., Exhibit ("Ex.") J (Email from Bill Day to Mai Dinh (May 19,

2015) ("Letter of Reprimand Response Email")) at 1, ECF No. 70-13.  Ultimately, "[o]n June 2,

2015, Ms. Dinh issued [the p]laintiff a Letter of Reprimand for Conduct Unbecoming of a

Federal Employee."  Def.'s Facts ¶ 14; <u>see</u> Pl.'s Facts ¶ 54.

### 2. The Plaintiff's November 2015 Suspension

As part of the bi-weekly report system established by Ms. Dinh in 2015, see supra Section I.A.1, each staff attorney was required to set target dates for work completion, see Def.'s Facts ¶ 18; Pl.'s Opp'n at 22, ¶ 18.  The defendant alleges, and the plaintiff disputes, that "[the p]laintiff did not set target dates in accordance with Ms. Dinh's instructions[,]" Def.'s Facts ¶ 20; see Pl.'s Opp'n at 22, ¶ 20, and that, therefore, "Ms. Dinh set target dates for [the p]laintiff[,]" Def.'s Facts ¶ 21; see Pl.'s Opp'n at 23, ¶ 21.  Additionally, the defendant alleges that the plaintiff failed to discuss changes to target dates with Ms. Dinh as required.  See Def.'s Facts ¶¶ 22–23; Pl.'s Opp'n at 23, ¶¶ 22–23.  Subsequently, "[o]n July 16, 2015, Ms. Dinh issued [the p]laintiff a proposed suspension for five calendar days[,]" Def.'s Facts ¶ 24; see Pl.'s Facts ¶ 55, which contained "one charge for failure to follow supervisor instructions and three specifications[,]" Def.'s Facts ¶ 25; see Pl.'s Opp'n at 24, ¶ 25.  "Specification[s] 1 and 2 alleged [that the p]laintiff changed certain target dates in the bi-weekly report without discussing the change with Ms. Dinh[,]" Def.'s Facts ¶ 26; see Pl.'s Opp'n at 24, ¶ 26, and "[s]pecification 3 alleged [that the p]laintiff failed to provide Ms. Dinh an update on a work assignment related to the Plant Variety Protection Office[,]" Def.'s Facts ¶ 27; see Pl.'s Opp'n at 24, ¶ 27.

On August 4, 2015, the plaintiff provided a response to the proposed suspension, see Def.'s Facts ¶ 29; Pl.'s Opp'n at 24, ¶ 29, and on August 5, 2015, "the [p]laintiff and her then[-]attorney met with Ricci and [Human Resources Specialist Matt Green], regarding the proposed suspension[,]" Pl.'s Facts ¶ 56; see Def.'s Facts ¶ 30.  "On September 8, 2015, Ms. Ricci issued her decision, finding the evidence supported Specification[s] 1 and 2 and the evidence did not support Specification 3."  Def.'s Facts ¶ 31; see Pl.'s Facts ¶ 56; Def.'s Mot., Ex. O (Decision on Proposed Five (5) Calendar Day Suspension ("November 2015 Suspension Decision")), ECF

No. 70-18.  Ms. Ricci ultimately "suspended [the p]laintiff for three days, effective November 2

through 4, 2015."  Def.'s Facts ¶ 32; see Pl.'s Facts ¶ 56.

### 3.  The Plaintiff's June 2017 Suspension

After the plaintiff was detailed to work on the Combined Federal Campaign in November

2016, see Pl.'s Facts ¶ 57, on February 22, 2017, "Ms. Dinh provided [the p]laintiff a written

notice of the conclusion of her detail with the Combined Federal Campaign, informing [the

p]laintiff that she needed to report back to the [Office of the General Counsel] on February 23,

20[17][,]" Def.'s Facts ¶ 34; see Pl.'s Facts ¶ 59.  The plaintiff then had two verbal altercations

on February 22, 2017, and February 23, 2017, with Ms. Dinh and Ms. Ricci respectively.  See

Def.'s Facts ¶¶ 35–53; Pl.'s Facts ¶ 61.  However, the parties dispute which individual was the

primary aggressor in these instances.  See, e.g., Def.'s Facts ¶¶ 36–37 (stating that, when the

plaintiff questioned Ms. Dinh regarding the plaintiff's return date, the plaintiff "raised her voice"

and "interrupted Ms. Dinh"); id. ¶¶ 46–48 (stating that, when the plaintiff entered Ms. Ricci's

office, the plaintiff "raised her voice" and "interrupted Ms. Ricci[,]" causing "Ms. Ricci [to]

ask[] [the p]laintiff to leave her office and lock[] her door"); Pl.'s Facts ¶ 61 (stating that, when

the plaintiff entered Ms. Ricci's office, "Ricci ran around her desk and ran toward the

[p]laintiff[,]" and "yelled at the [p]laintiff to leave[,]" causing the plaintiff to "le[ave] the office

and call[] security").

Following these incidents, "[o]n March 6, 2017, Ms. Dinh issued [the p]laintiff a

proposed suspension for fourteen calendar days[,]" Def.'s Facts ¶ 54; see Pl.'s Opp'n at 32, ¶ 54

(asserting a notification date of March 7, 2017), which included "one charge for conduct

unbecoming a federal employee and four specifications[,]" Def.'s Facts ¶ 55; see Pl.'s Opp'n at

33, ¶ 55.  "Specification[s] 1 and 2 addressed [the p]laintiff's interaction with Ms. Dinh on

February 22, 2017[,]" Def.'s Facts ¶ 56; see Pl.'s Opp'n at 33, ¶ 56, and "[s]pecification[s] 3 and

4 addressed [the p]laintiff's interaction with Ms. Ricci on February 23, 2017[,]" Def.'s Facts ¶

57; see Pl.'s Opp'n at 33, ¶ 57.  The plaintiff responded to the proposed suspension on March 27,

2017, see Pl.'s Facts ¶ 63; Def.'s Facts ¶ 58, and on June 8, 2017, "[Associate General Counsel]

David Grahn issued his decision, finding the evidence supported Specifications 1, 3, and 4."

Def.'s Facts ¶ 59; see Pl.'s Facts ¶ 63.  The plaintiff was therefore suspended for nine calendar

days, effective June 11, 2017, through June 19, 2017.  See Def.'s Mot., Ex. U (Decision on

Proposed Fourteen (14) Calendar Day Suspension ("June 2017 Suspension Decision")) at 4, ECF

No. 70-24.

### 4.  The Plaintiff's March 2018 Removal

On October 27, 2016, the defendant issued a Performance Plan, see Def.'s Facts ¶ 61;

Pl.'s Opp'n at 35, ¶ 61, which "advised [the p]laintiff . . . of three critical elements required for

her position as Senior Counsel[,]" Def.'s Facts ¶ 62; see Pl.'s Opp'n at 36, ¶ 62.  On July 17,

2017, the plaintiff received a letter which was titled Performance Improvement Period on the

subject line, wherein "Ms. Dinh informed [the p]laintiff  that her performance was deficient for

Critical Elements 1 through 3 of her Performance Plan,[4] described the deficiencies, set

requirements and expectations, notified [the p]laintiff of where she could receive assistance, and

provided [the p]laintiff a 120[-]day period to improve her performance."  Def.'s Facts ¶ 66; see

Def.'s Mot., Ex. X (Performance Improvement Period), ECF No. 70-27.  The defendant

identified specific deficiencies, which the plaintiff contests, see Pl.'s Opp'n at 38, ¶ 67, which

were:

---

[4] The three critical elements of the plaintiff's Performance Plan were: (1) "Mission Results, Legal Counseling and
Case Handling[;]" (2) "Productivity and Time Management[;]" and (3) "Civil Rights, Equal Opportunity, Customer
Service and Communication."  Def.'s Mot., Ex. X (Performance Improvement Period) at 1, ECF No. 70-27.

> (a) failure to prepare legal documents that are professional and informative and that are logical, well-organized, factually and legally correct, analytically precise and reflect proper spelling, punctuation, and grammar; (b) failure to identify and consider relevant facts, legal authorities and theories, and to conduct legal research with limited guidance and supervision to ensure that legal advice on legal questions or factual issues, that are often complex, difficult, or could substantially affect the operation of a major program, is based on a sound understanding of the relevant facts and law; (c) failure to provide requested information and to keep supervisors informed on new matters, novel legal strategies or positions, and the status of pending matters; (d) inability to handle assigned workload; and (e) her office demeanor and interactions evidenced a lack of cooperation with, and respect for, her supervisors and co-workers.

Def.'s Facts ¶ 67 (citing Def.'s Mot., Ex. X (Performance Improvement Period) at 2–7).

Based upon the plaintiff's alleged failure to meet the requirements of her Performance Plan, "[o]n December 7, 2017, Ms. Dinh issued [the p]laintiff a Notice of Proposed Removal." Def.'s Facts ¶ 114; see Pl.'s Facts ¶ 3. This first notice was later rescinded and Ms. Dinh issued a second Notice of Proposed Removal on January 11, 2018. See Def.'s Facts ¶¶ 116–17; Pl.'s Opp'n at 56, ¶¶ 116–17. Specifically, Ms. Dinh "proposed [that the p]laintiff should be removed from federal service because [she] did not improve her performance in Critical Element Nos. 1, 2, and 3 to the 'Fully Successful' level as required in the [Performance Plan]." Def.'s Facts ¶ 118; see Pl.'s Opp'n at 56, ¶ 118; see also Def.'s Mot., Ex. CC (Second Notice of Proposed Removal) at 1–3, ECF No. 70-32 (specifying the bases for the plaintiff's failure to satisfy each of the critical elements). The plaintiff responded by objecting to the Second Notice of the Proposed Removal on February 2, 2018, see Def.'s Facts ¶ 122; Pl.'s Facts ¶ 9, and "[o]n February 12, 2018, [Regional Attorney] John Vos held an oral conference with [the p]laintiff and her counsel about the Second Notice of Proposed Removal[,]" Def.'s Facts ¶ 123; see Pl.'s Facts ¶ 10. On March 14, 2018, Vos "issued a letter sustaining the Second Notice of Proposed Removal upholding the Agency's decision to remove [the p]laintiff from federal service[,]" Def.'s Facts ¶

124; see Pl.'s Facts ¶ 11, and "[t]he effective date of [the p]laintiff's removal was March 16, 2018[,]" Def.'s Facts ¶ 127; see Pl.'s Opp'n at 60, ¶ 127.

**B.     Procedural Background**

On December 31, 2018, the plaintiff filed her initial Complaint in this case, see Complaint ("Compl."), ECF No. 1, and on January 9, 2019, the plaintiff filed her Amended Complaint, see Am. Compl.  The plaintiff filed her motion for summary judgment on July 14, 2021, see Pl.'s Mot., the defendant filed his cross-motion for summary judgment and opposition to the plaintiff's motion on August 13, 2021, see Def.'s Mot., the plaintiff filed her opposition to the defendant's motion for summary judgment on September 15, 2021, see Pl.'s Opp'n, and the defendant filed his reply in support of his cross-motion for summary judgment on October 5, 2021, see Def.'s Reply.

## II.     STANDARD OF REVIEW

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party.'" Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party.  See Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)).  The Court must therefore draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true.  Anderson, 477 U.S. at 255.  The non-moving party, however,

cannot rely on "mere allegations or denials," Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248), but must instead present specific facts "such that a reasonable [factfinder] could return a verdict for the non[-]moving party[,]" Grosdidier v. Broad. Bd. of Governors, Chairman, 709 F.3d 19, 23 (D.C. Cir. 2013) (quoting Anderson, 477 U.S. at 248). Thus, "[c]onclusory allegations unsupported by factual data will not create a triable issue of fact." Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin., 185 F.3d 898, 908 (D.C. Cir. 1999) (Garland, J., concurring) (alteration in original) (quoting Exxon Corp. v. Fed. Trade Comm'n, 663 F.2d 120, 126–27 (D.C. Cir. 1980)). If the Court concludes that "the non[-]moving party has failed to make a sufficient showing on an essential element of [her or his] case with respect to which [the non-moving party] has the burden of proof," then the moving party is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Thus, when "ruling on cross-motions for summary judgment, the [C]ourt shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." Shays v. Fed. Election Comm'n, 424 F. Supp. 2d 100, 109 (D.D.C. 2006).[5]

## III.    ANALYSIS

The plaintiff alleges that the defendant discriminated against her based on her race and sex and retaliated against her "for her protected EEO activity" when he "removed her from federal service," see Am. Compl. ¶¶ 226–27 (claim of discrimination based on race and sex); id. ¶ 225 (retaliation claim), "suspended her in November 2015," see id. ¶¶ 230–31 (claim of

---

[5] The Court also notes that, although the plaintiff is proceeding pro se, as an attorney, she "is not automatically subject to the very liberal standards afforded to a non-attorney pro se plaintiff because an attorney is presumed to have a knowledge of the legal system and need less protections from the [C]ourt." Richards v. Duke Univ., 480 F. Supp. 2d 222, 234 (D.D.C. 2007). Therefore, the Court "will not give her all the benefits of the liberal standards that are afforded to pro se litigants and [the] plaintiff's pro se status will not weigh in favor of [granting her motion or denying the defendant's cross-motion]." Id. at 235.

discrimination based on race and sex); id. ¶ 229 (retaliation claim), and "suspended her [again] in June 2017," see id. ¶¶ 233–34 (claim of discrimination based on race and sex); id. ¶ 232 (retaliation claim); "subjected [her] to harassment and a hostile work environment" based on "her protected EEO activity," id. ¶ 235, "her race," id. ¶ 236, and "her sex," id. ¶ 237; and "committed a [p]rohibited [p]ersonnel [a]ct in violation of 5 U.S.C. § 2302(b)(8)[,] . . . when [he] removed her from federal service on the basis of her protected disclosure of activity . . . that she reasonably believed to be unlawful[,]" id. ¶ 228.  The plaintiff argues that she is entitled to summary judgment because: (1) the removal decision was "time[-]barred, barred by collateral estoppel[,] and prohibited by the appeal procedures under the Collective Bargaining Agreement [("CBA")][,]" Pl.'s Mot. at 1–2; (2) "the protections provided to [w]histleblowers applied to her for disclosing to her supervisors that there were violations of laws including violations of [the] Antideficiency Act[,]" id. at 10; and (3) "she presented a prima facie case of discrimination[,]" id. at 19, and "was subjected to a hostile work environment[,]" id. at 34, "based on her race, gender[,] and engag[ement] in protected EEO activity[,] which the [d]efendant cannot refute by providing a legitimate reason for the discriminatory conduct[,]" id. at 19; see id. at 34.

       In response, the defendant argues that he is entitled to summary judgment because "[the p]laintiff cannot demonstrate that the Agency unlawfully discriminated against her[,] . . . subjected her to a hostile work environment[,] or retaliated against her for her protected EEO activity."  Def.'s Mem. at 1.  Referencing the Merit Systems Protection Board ("MSPB") decision which upheld the Agency's removal of the plaintiff from federal service, the defendant further argues that

              [the p]laintiff cannot demonstrate that the [MSPB] administrative law judge acted
              in an arbitrary and capricious manner when she concluded that [the p]laintiff failed
              to demonstrate she made a protected disclosure and that the Agency demonstrated
              by clear and convincing evidence that it would have removed [the p]laintiff even

absent her protected disclosure or activity.

Id.  The Court will address the parties' cross-motions for summary judgment by discussing: (1) the plaintiff's Title VII discrimination and retaliation claims, and (2) the plaintiff's claim that the Agency subjected her to a prohibited personnel action in response to her allegedly protected disclosure.

## A.    The Plaintiff's Title VII Claims

### 1.   Discrimination Claims

The plaintiff argues that she "is entitled to summary judgment . . . since she presented a prima facie case of discrimination based on her race [and] gender . . . which the [d]efendant cannot refute by providing a legitimate reason for the discriminatory conduct of the [d]efendant's employees."  Pl.'s Mot. at 19.  In response, the defendant argues that he is entitled to summary judgment because "the Agency had a legitimate, non-discriminatory reason to remove [the p]laintiff from federal service[,]" Def.'s Mem. at 12, and "to suspend [the p]laintiff" in 2015, see id. at 21, and 2017, see id. at 23.  Moreover, the defendant argues that the plaintiff "fails to point to any evidence of pretext, including that she [has] fail[ed] to identify any similarly situated comparator who was treated more favorably than she was" in regards to any of the adverse employment actions the plaintiff is challenging.  Id. at 13.

Pursuant to Title VII, "[a]ll personnel actions affecting employees or applicants for employment" in the federal government "shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16(a).  When a plaintiff brings discrimination claims under Title VII and relies on circumstantial evidence to establish an alleged unlawful employment action, as the plaintiff does here, see generally Pl.'s Mot., the Court analyzes the claims under the three-part burden-shifting framework of McDonnell Douglas

Corp. v. Green.  See Jackson v. Gonzalez, 496 F.3d 703, 706 (D.C. Cir. 2007) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973)); Chappell-Johnson v. Powell, 440 F.3d 484, 487 (D.C. Cir. 2006) (noting that "the Supreme Court sets out a burden-shifting approach [in McDonnell Douglas] to employment discrimination claims in cases where the plaintiff lacks direct evidence of discrimination").  Under the McDonnell Douglas framework, the plaintiff bears the initial burden of establishing her prima facie case of discrimination.  411 U.S. at 802; see Walker v. Johnson, 798 F.3d 1085, 1091 (D.C. Cir. 2015); see also Holcomb, 433 F.3d at 895.  To state a prima facie case of discrimination, the plaintiff must establish "that (1) [s]he is a member of the protected class, (2) [s]he suffered an adverse employment action, and (3) the unfavorable [adverse] action gives rise to an inference of discrimination (that is, an inference that h[er] employer took the action because of h[er] membership in the protected class.)"  Forkkio v. Powell, 306 F.3d 1127, 1130 (D.C. Cir. 2002) (citing Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999)); see also Carroll v. England, 321 F. Supp. 2d 58, 68 (D.D.C. 2004).

Once a prima facie case is established, then "[t]he burden . . . must shift to the employer to articulate some legitimate, non[-]discriminatory reason" for its actions.  McDonnell Douglas, 411 U.S. at 802; see Walker, 798 F.3d at 1092; Holcomb, 433 F.3d at 896.  However, if the defendant initially provides legitimate, non-discriminatory reasons for the adverse employment actions at issue, "the question whether [the plaintiff] actually made out a prima facie case is 'no longer relevant' and thus 'disappear[s]' and 'drops out of the picture.'"[6]  Brady v. Off. Sergeant

---

[6] Although, in this context, an employee need not make out a prima facie case of discrimination, she must still, at a minimum, demonstrate that she suffered an adverse employment action.  See Brady, 520 F.3d at 493.  Pursuant to Title VII, an "adverse employment action [is an action that causes] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits."  Douglas v. Preston, 559 F.3d 549, 552 (D.C. Cir. 2009) (citations omitted); see also Forkkio, 306 F.3d at 1130 (noting that Title VII's anti-discrimination provision protects individuals only from employment-related discrimination).  Further, a plaintiff has suffered an adverse employment action if she experiences "materially adverse consequences affecting the terms, conditions, or privileges of employment or future

(continued . . .)

at Arms, 520 F.3d 490, 493 (D.C. Cir. 2008) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510, 511 (1993)).  The plaintiff must then present evidence that the defendant's proffered reason was a "pretext for discrimination," McDonnell Douglas, 411 U.S. at 805, and produce "sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory [ ] reason was not the actual reason and that the employer intentionally discriminated [ ] against the employee[,]" Walker, 798 F.3d at 1092 (internal quotation marks omitted).

To demonstrate that the employer's proffered reason was pretextual, the plaintiff must provide evidence from which a reasonable jury could find that the employer's reasons for acting are "unworthy of credence."  Reeves, 530 U.S. at 143 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981); see Hairston v. Vance-Cooks, 773 F.3d 266, 272 (D.C. Cir. 2014) (noting that showing pretext "requires more than simply criticizing the employer's decision[-]making process").  Further, it is not sufficient for the plaintiff to "show that a reason given for a[n] action [was] not just, or fair, or sensible;" nor is it sufficient to challenge "the 'correctness or desirability' of [the] reasons offered."  Fischbach v. D.C. Dep't of Corrs., 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting Pignato v. Am. Trans Air, Inc., 14 F.3d 342, 349 (7th Cir. 1994)).  Rather, the plaintiff must provide evidence from which "a reasonable jury could infer that the employer's given explanation was pretextual and that this pretext shielded discriminatory motives."  Jackson, 496 F.3d at 707 (citations omitted).

Here, the plaintiff references three adverse employment actions that she alleges were the result of discrimination against her based on her race and sex: (1) her removal from federal service, see Pl.'s Mot. at 25; Am. Compl. ¶¶ 226–27; (2) her suspension in November 2015, see Pl.'s Mot. at 30; Am. Compl. ¶¶ 230–31; and (3) her suspension in June 2017, see Pl.'s Mot. at

---

employment opportunities such that a reasonable trier of fact could find objectively tangible harm."  Forkkio, 306 F.3d at 1131 (citing Brown, 199 F.3d at 457).

33; Am. Compl. ¶¶ 233–34.[7]  Furthermore, the defendant has provided justification for each of

these actions.  Specifically, regarding the plaintiff's removal from federal service, the defendant

states that "it is undisputed that [the p]laintiff was aware of her performance standards, was

provided an opportunity to address her shortcomings, and ultimately failed to meet her critical

elements, which resulted in her removal[.]"  Def.'s Mot. at 12 (citing Def.'s Facts ¶¶ 61–127).

Regarding the November 2015 suspension, the defendant states that "it is undisputed that [the

p]laintiff failed to comply with her supervisor's direction."  Id. at 21 (citing Def.'s Facts ¶¶ 15–

32).  And regarding the June 2017 suspension, the defendant states that "it is undisputed that [the

p]laintiff acted in [an] unprofessional manner with her supervisors, Ms. Dinh and Ms. Ricci."  Id.

at 23 (citing Def.'s Facts ¶¶ 33–60).

    The Court concludes that the explanations provided by the defendant qualify as

legitimate, non-discriminatory reasons for each of the adverse employment actions, i.e.,

"dissatisfaction with the plaintiff's performance[,]" Robertson v. Dodaro, 767 F. Supp. 2d 185,

191 (D.D.C. 2011), the plaintiff's "failure to follow supervisory instructions[,]" Arnoldi v. Bd. of

Trs., Nat'l Gallery of Art, 557 F. Supp. 3d 105, 115 (D.D.C. 2021), and the plaintiff's

"unprofessional conduct[,]" Waggel v. George Wash. Univ., No. 16-cv-1412, 2018 WL

5893346, at *21 (D.D.C. Nov. 9, 2018).  See also Baloch v. Kempthorne, 550 F.3d 1191, 1200

(D.C. Cir. 2008) (holding that "failure to comply with instructions or respect [for a supervisor's]

authority" constituted a legitimate, non-discriminatory reason for employee's termination);

---

[7] As a preliminary matter, the Court concludes that these actions constitute adverse employment actions as they clearly caused the plaintiff to "experience[] materially adverse consequences affecting the terms, conditions, or privileges of employment . . . such that a reasonable trier of fact could find objectively tangible harm." Forkkio, 306 F.3d at 1130–31.

Furthermore, although the plaintiff's suspensions occurred prior to her removal, the Court will analyze the adverse employment actions taken against the plaintiff in the order in which they are addressed by the parties.  See Pl.'s Mot. at 25, 30, 33; Def.'s Mot. at 12, 21, 23.

Drewrey v. Clinton, 763 F. Supp. 2d 54, 63 (D.D.C. 2011), aff'd, 466 F. App'x 9 (D.C. Cir.

2012) ("An employee's insubordination and failure to perform his duties are legitimate, non-

discriminatory reasons for adverse employment actions."); Royall v. Nat'l Ass'n of Letter

Carriers, AFL-CIO, 507 F. Supp. 2d 93, 106 (D.D.C. 2007) (Walton, J.), aff'd, 548 F.3d 137

(D.C. Cir. 2008) (finding that the defendant proffered a legitimate, non-discriminatory reason for

its actions where "the plaintiff understood the duties and responsibilities of the position . . . and

simply failed to perform them in a satisfactory manner").  Thus, because the defendant has

provided legitimate, non-discriminatory reasons for the adverse employment actions at issue,

"the question whether [the plaintiff] actually made out a prima facie case is 'no longer relevant'

and thus 'disappear[s]' and 'drops out of the picture.'"  Brady, 520 F.3d at 493 (quoting St.

Mary's Honor Ctr., 509 U.S. at 510, 511).  Accordingly, the Court must next determine whether

the plaintiff has provided "sufficient evidence for a reasonable jury to find that the employer's

asserted non[-]discriminatory reason[s] w[ere] not the actual reason[s] and that the employer

intentionally discriminated against the employee[,]" id. at 494, or in other words, that the

defendant's asserted reasons are merely pretext for discrimination, see McDonnell Douglas, 411

U.S. at 805.

> ### i.     The Plaintiff's Removal

With respect to the plaintiff's removal, she asserts that "there was no basis for [her] to be

on a performance [ ] plan[,]" Pl.'s Mot. at 25, and, furthermore, that the performance plan itself

"violated written USDA policy[,]" id. at 27, "failed to comply with the CBA requirements," id.,

and "violated the [p]laintiff's Weingarten rights[,]" id. at 28.  Thus, the plaintiff challenges the

validity of the defendant's decision to place her on a performance plan, as well as the validity of

the performance plan itself, in support of her position that the basis for her removal was

pretextual.  See Pl.'s Mot. at 25–28.  However, as to the requirements the defendant imposed on

the plaintiff through the performance plan, "Title VII . . . does not authorize a federal court to

become a super-personnel department that reexamines an entity's business decisions[,]" Barbour

v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (internal quotation marks omitted), and here,

"other than conclusory allegations that her supervisors discriminated against her because of her

race and sex, [the p]laintiff does not point to any specific record evidence that her performance

was fully successful or better[,]" Def.'s Mem. at 15; see generally Pl.'s Mot.  On the other hand,

the defendant provided thorough explanations of the standards and requirements, as well as the

plaintiff's deficiencies.  See Def.'s Mot., Ex. X (Performance Improvement Period) (listing and

describing critical elements and improvement standards); id., Ex. CC (Second Notice of

Proposed Removal) at 1–3 (specifying the bases for the plaintiff's failure to satisfy each of the

critical elements).  And, to the extent that the plaintiff disagrees with the defendant's decisions

and assessments regarding the performance plan, a showing of pretext "requires more than

simply criticizing the employer's decision[-]making process[,]" Hairston, 773 F.3d at 272, or the

"correctness or desirability of [the] reasons offered[,]" Fischbach, 86 F.3d at 1183 (internal

quotation marks omitted), by the defendant.  Moreover, "where 'reliance on [subjective factors]

is modest, and the employer has other, well-founded reasons for the employment decision,

summary judgment for the defendant may be appropriate.'"  Bennett v. Solis, 729 F. Supp. 2d

54, 67 (D.D.C. 2010) (quoting Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1298 (D.C. Cir. 1998))

(finding that a performance plan, based partially on "subjective" assessments, was not

necessarily evidence of pretext).

Additionally, as to the plaintiff's arguments that the defendant violated USDA policy,

failed to comply with the CBA requirements, and violated the plaintiff's Weingarten rights, the

Court concludes that these allegations are irrelevant given that the plaintiff has failed to proffer evidence sufficient to infer discriminatory intent.  See Brady, 520 F.3d at 494 (stating that a plaintiff alleging a Title VII claim must provide "sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason[s] w[ere] not the actual reason[s] and that the employer intentionally discriminated against the employee").  Thus, even if the Court accepts as true the plaintiff's allegations regarding the defendant's violations and non-compliance, those allegations would not sufficiently "give[] rise to an inference of discrimination[,]" Forkkio, 306 F.3d at 1130, because "an employer's 'failure to follow its own regulation and procedures, alone, may not be sufficient to support the conclusion that its explanation for the challenged employment action is pretextual[,]'" Johnson v. Wash. Metro. Area Transit Auth., 314 F. Supp. 3d 215, 220 (D.D.C. 2018) (quoting Fischbach, 86 F.3d at 1183).  Furthermore, "[t]his is particularly so where . . . there is no evidence that [the plaintiff's membership in a protected class] was the reason for the [adverse employment action.]"  Id. (finding the plaintiff's comparisons between the plaintiff and similarly situated employees insufficient to infer discriminatory intent).  Here, the plaintiff has proffered no evidence of discriminatory intent, based on comparator information or otherwise, aside from one statement that "since becoming her supervisors, Ms. Ricci and Ms. Dinh continuously assigned [the plaintiff] administrative enforcement cases that [were] below her grade level[,]" and "[i]n comparison, they have not assigned any administrative enforcement cases to other white employees, including a white GS-15 Senior Counsel as well as a white GS-14 attorney."  Pl.'s Mot. at 19.  However, as the defendant notes, "[the p]laintiff does not identify these employees[,]" Def.'s Mem. at 14, or provide any additional information regarding these referenced employees or other similarly situated employees, sufficient to constitute measurable comparator information, see generally

Pl.'s Mot.  See Burton v. District of Columbia, 153 F. Supp. 3d 13, 67 (D.D.C. 2015) ("To raise an inference of discrimination based on such comparator evidence, the plaintiff must demonstrate: (1) that 'all of the relevant aspects of [his] employment situation were nearly identical to those of the [other] employee'; and (2) that the comparator was 'charged with offenses of comparable seriousness' but disciplined less harshly.") (quoting Burley v. Nat'l Passenger Rail Corp., 801 F.3d 290, 301 (D.C. Cir. 2015)).  And, although a "dearth of comparator evidence . . . does not necessarily doom [a plaintiff's] claim, . . . it may well make it more difficult to raise an inference 'strong enough to let a reasonable factfinder conclude that discrimination has occurred at all.'"  Walker, 798 F.3d at 1092 (quoting Aka, 156 F.3d at 1291).

Accordingly, because here the plaintiff has provided no other evidence besides her non-specific comparator information, and instead has provided only conclusory statements that "the [d]efendant removed the [p]laintiff from federal service based on her race [and] gender[,]" Pl.'s Mot. at 25, the Court must conclude that a reasonable jury could not "infer that the [defendant]'s given explanation [for the plaintiff's removal] was pretextual[.]"  Jackson, 496 F.3d at 707.

### ii.    The Plaintiff's November 2015 and June 2017 Suspensions

The plaintiff argues that she is "entitled to summary judgment . . . for the personnel process that resulted in Ricci suspending the [p]laintiff in November of 2015 based on her [ ] race [and] gender[,]" Pl.'s Mot. at 30, and for "the nine day suspension in June of 2017[, which] was [also] based on her race [and] gender[,]" id. at 33.  The defendant argues that, as to the November 2015 suspension, "[the p]laintiff failed to comply with her supervisor's direction[,]" Def.'s Mem. at 21, and as to the June 2017 suspension, "[the p]laintiff acted in [an] unprofessional manner with her supervisors, Ms. Dinh and Ms. Ricci[,]" id. at 23.  Furthermore, the defendant accurately notes that "[the p]laintiff's amended complaint and motion for summary

judgment are littered with missives reflecting her subjective disagreements with her supervisors, . . . [b]ut nothing in the record suggests that [the p]laintiff's supervisors did not honestly and reasonably believe the reasons given for [the p]laintiff's suspension[s]."  Def.'s Mem. at 23, 25.

The plaintiff asserts similar arguments regarding her suspensions, as she does regarding her removal, stating that her supervisors and deciding officials failed to follow proper internal policies and procedures, see Pl.'s Mot. at 31 (stating that Ms. Dinh "violated [ ] [p]olicy by creating her own unauthorized case tracking system" and "created [rules] only for the [p]laintiff"); id. at 34 (stating that the June 2017 "[fourteen-]day suspension was deficient as a matter of law and Grahn did not have a bas[i]s for suspending the [p]laintiff"), and that the suspensions were the result of "disparate treatment of [the plaintiff] as compared to similarly situated employees[,]" id.; see id. at 31.  However, as the Court has previously discussed, see supra Section III.A.1.i, the fact that the supervisors' and deciding officials' actions violated internal policies, or were deficient or improper, "may not be sufficient to support the conclusion that [the defendant's] explanation for the challenged employment action is pretextual[,]" Fischbach, 86 F.3d at 1183, absent additional evidence, such as comparator information, that would allow an inference of discriminatory intent.  It is permissible for employers to develop and administer management and evaluation tools, see, e.g., Husain v. Barsa, No. 15-cv-708 (RDM), 2021 WL 663206, at *13 (D.D.C. Feb. 19, 2021) (finding that an employer's "requir[ement] that [the plaintiff] provide reports regarding her day's activities while teleworking" did not evidence discriminatory intent), and "[g]iven [ ] support for the defendant's appraisal of the plaintiff's work product, it is not this Court's role to act as a 'super-personnel department that reexamines an entity's business decisions' and independently evaluate the quality of the plaintiff's work product[,]" Manuel v. Potter, 685 F. Supp. 2d 46, 63 (D.D.C. 2010) (Walton, J.) (quoting

Holcomb, 433 F.3d at 897) (referencing examples of the plaintiff's unsatisfactory performance provided by the defendant).  Furthermore, "'good institutional administration' justifie[s] disciplining [the plaintiff] for [ ] breaches of orders and office etiquette[,]" Baloch, 550 F.3d at 1200 (quoting Mitchell v. Vanderbilt Univ., 389 F.3d 177, 182 (6th Cir. 2004)), such as "verbal altercations . . . preceded by [the plaintiff's] failure to comply with instructions or respect [for her supervisor's] authority[,]" id.

Therefore, it was within the defendant's authority to impose the evaluative tool it used—namely, the bi-weekly reports required of the plaintiff—and to discipline the plaintiff for what it deemed "conduct unbecoming a federal employee[,]" Def.'s Facts ¶ 55; see Def.'s Mot., Ex. O (November 2015 Suspension Decision); id., Ex. U (June 2017 Suspension Decision).  The plaintiff challenges the validity of the defendant's bi-weekly report system that led to her November 2015 suspension, Pl.'s Mot. at 31, and the defendant's characterization of the verbal altercations that led to her June 2017 suspension, id. at 33.   However, given that the defendant has provided "support for the [its] appraisal of the plaintiff's work product," Manuel, 685 F. Supp. 2d at 63; see generally Def.'s Mot., Ex. O (November 2015 Suspension Decision); id., Ex. U (June 2017 Suspension Decision), and because "it is not this Court's role to act as a 'super-personnel department that reexamines an entity's business decisions' and independently evaluate the quality of the plaintiff's work product[,]" Manuel, 685 F. Supp. 2d at 63 (quoting Holcomb, 433 F.3d at 897), the Court cannot evaluate the defendant's suspension decisions—especially absent any additional evidence of discriminatory intent.  To that point, the plaintiff has presented no reasonably specific comparator information that would indicate that supervisory "rules [were] created only for the [p]laintiff, constitut[ing] disparate treatment," Pl.'s Mot. at 31, and instead provides only a conclusory statement that "the issuance of the suspension[s] demonstrate clear

disparate treatment of [the plaintiff] as compared to similarly situated employees," id. at 34. Accordingly, as with her argument regarding disparate treatment in the context of her removal from federal service, see supra Section III.A.1.i, the Court must also conclude that a reasonable jury could not "infer that the [defendant]'s given explanation[s] [for the plaintiff's suspensions] w[ere] pretextual[.]" Jackson, 496 F.3d at 707.

## 2. Retaliation Claims

Finally, the Court will address the plaintiff's argument that "she presented a prima facie case of [retaliation] based on her . . . engaging in protected EEO activity which the [d]efendant cannot refute by providing a legitimate reason for the discriminatory conduct[.]" Pl.'s Mot. at 19. In support of this contention, the plaintiff states that "starting in or around June 2013, [the plaintiff] reported illegal discrimination, harassment, and retaliation against her based upon her race, age, [and] sex[,] as well as her protected EEO activities and her opposition to such illegal activity[,]" id. at 20, and "ultimately initiated an EEO complaint in May 2015[,]" id. at 23. She further states that she reported discriminatory conduct "on several occasions, including immediately prior to the events that occurred on February 22 and 23, 2017[,]" id. at 20, and "fil[ed] a second EEO complaint against Dinh in June of 2017[,]" id. at 26. She argues that a causal connection exists between her protected EEO activity, and her two suspensions and ultimate removal from federal service. See id. at 20, 26, 31. In response, the defendant relies on its same arguments regarding the plaintiff's discrimination claims based upon race and sex to the plaintiff's retaliation claims as well, arguing that "the Agency had legitimate, non-discriminatory, and non-retaliatory reasons" for its adverse employment actions. See Def.'s Mem. at 12, 21, 23.

"Like claims of discrimination, claims of retaliation are governed by the McDonnell Douglas burden-shifting scheme."  Carney v. Am. Univ., 151 F.3d 1090, 1094 (D.C. Cir. 1998) (citing McKenna v. Weinberger, 729 F.2d 783, 790 (D.C. Cir. 1984)).  Indeed, Title VII includes a retaliation provision that makes it unlawful for an employer to retaliate against any employee "because he [or she] has opposed any practice made an unlawful employment practice by [Title VII], or because he [or she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a).  Thus, similar to Title VII discrimination claims, retaliation claims brought pursuant to Title VII that are based on circumstantial evidence trigger the McDonnell Douglas burden-shifting framework. 411 U.S. at 802–05; see Walker, 798 F.3d at 1091; see also Holcomb, 433 F.3d at 895.  Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of retaliation by showing "(1) that [s]he engaged in [a] statutorily protected activity . . . ; (2) that [s]he suffered a materially adverse action by h[er] employer; and (3) that a causal link connects the [protected activity and the materially adverse action]."  Jones v. Bernanke, 557 F.3d 670, 677 (D.C. Cir. 2009); see also Hamilton v. Geithner, 666 F.3d 1344, 1357 (D.C. Cir. 2012).  Once a prima facie case is established, the burden then shifts to the employer, who must articulate some legitimate and non-retaliatory reason for its actions.  See Jones, 557 F.3d at 677.  However, "where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the [Court] need not—and should not—decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas[,]" Brady, 520 F.3d at 494, and instead must evaluate whether the plaintiff has produced "sufficient evidence for a reasonable jury to find that the employer's asserted [ ] non-retaliatory reason[s]

w[ere] not the actual reason[s] and that the employer intentionally [ ] retaliated against the employee[,]" Walker, 798 F.3d at 1092 (internal quotation marks omitted).

Like Title VII discrimination claims that progress to this point, although the plaintiff need not establish a prima facie case of retaliation to survive summary judgment, she must still, at a minimum, demonstrate that she suffered an adverse employment action.  See Brady, 520 F.3d at 493.  Under Title VII's anti-retaliation provision, "adverse actions" are those that "produce[] an injury or harm" that is material, meaning that the action could "have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67–68 (2006) (quoting Rochon v. Gonzalez, 438 F.3d 1211, 1219 (D.C. Cir. 2006)) (other citation omitted); see also Forkkio, 306 F.3d at 1130 (noting that Title VII's anti-retaliation provision encompasses broader actions than Title VII's anti-discrimination provision and does not require the action to be employment-related).

Here, it is undisputed that the plaintiff filed two EEO complaints—one on May 12, 2015, see Pl.'s Facts ¶ 52; Def.'s Resp. to Pl.'s Facts ¶ 52, and one in June 2017, see Pl.'s Mot. at 26; see generally Def.'s Mem. (indicating no opposition to the plaintiff's contention that she filed an EEO complaint in June 2017).  The plaintiff also states that she "notified several USDA supervisors of [alleged] Antideficiency law violations at the time she discovered them in approximately August of 2017 for which she is entitled to Whistleblower Act protection."  Pl.'s Mot. at 13; but see Def.'s Mem. at 15–18 (arguing that the plaintiff's alleged Whistleblower Protection Act ("WPA") disclosure is not protected activity, based upon the plaintiff's MSPB decision).  The plaintiff also states that "starting in or around June 2013, [she] reported illegal discrimination, harassment, and retaliation against her based upon her race, age, [and] sex[,] as well as her protected EEO activities and her opposition to such illegal activity[,]" Pl.'s Mot. at

20, but does not elaborate or provide specific documentation regarding the reports she allegedly

made, see generally Pl.'s Mot.; Pl.'s Facts.  Thus, because the two EEO complaints and one

WPA disclosure are the "only specific protected activity alleged by the plaintiff[,]" Akridge v.

Gallaudet Univ., 729 F. Supp. 2d 172, 185 (D.D.C. 2010) (emphasis added), and "references [to]

other 'prior complaints of discrimination,'" without "any further information beyond that" are

insufficient to qualify as a protected activity, id., the Court concludes that, for purposes of its

retaliation analysis, the plaintiff's protected activities include only the plaintiff's EEO complaints

and the alleged WPA disclosure.

The Court concludes that, as with the defendant's response to the plaintiff's race and sex

discrimination claims, that the defendant has provided legitimate, non-discriminatory reasons for

the adverse employment actions at issue—namely the plaintiff's suspensions in 2015 and 2017,

and ultimate removal.[8]  See supra Section III.A.  Accordingly, the Court will "not [ ] decide

whether the plaintiff actually made out a prima facie case under McDonnell Douglas[,]" Brady,

520 F.3d at 494, and instead must evaluate whether the plaintiff has produced "sufficient

evidence for a reasonable jury to find that the employer's asserted [ ] non-retaliatory reason[s]

w[ere] not the actual reason[s] and that the employer intentionally [ ] retaliated against the

[plaintiff,]" Walker, 798 F.3d at 1092 (internal quotation marks omitted).

To establish a causal connection between her protected activities and the adverse actions

the plaintiff experienced, she advances arguments regarding the close temporal proximity of

these events.  See Pl.'s Mot. at 31 (arguing retaliation based upon "a causal connection between

---

[8] As with the plaintiff's discrimination claims based upon her race and sex, the Court also concludes for purposes of
the plaintiff's retaliation claims that these actions constitute adverse employment actions, as they clearly caused the
plaintiff to "experience[] materially adverse consequences affecting the terms, conditions, or privileges of
employment . . . such that a reasonable trier of fact could find objectively tangible harm[,]" Forkkio, 306 F.3d at
1130–31.  See supra n.7.

the timing of the proposed [2015] suspension (that resulted in a suspension) and the [p]laintiff's

EEO activity"); id. at 20 (arguing retaliation "[b]ased upon Agency management's clear

knowledge of [the plaintiff's] protected disclosures, and the close timing of the issuance of the

proposed [2017] suspension"); id. at 26 (arguing that "[t]here was a causal connection between

the [p]laintiff filing a second EEO complaint against Dinh in June of 2017 and the unauthorized

[performance plan]" which ultimately led to her removal).  However, "even if the temporal

proximity here w[ere] close enough to show a causal connection so as to satisfy a prima facie

case for retaliation, this would not, without more, provide sufficient evidence to show pretext."

Drewrey, 763 F. Supp. 2d at 64 (emphasis added); see Porter v. Fulgham, 601 F. Supp. 2d 205,

229 (D.D.C. 2009) ("Temporal proximity of the [adverse employment action] and the plaintiff's

earlier [protected activity], while it supports the finding of a prima facie case, is not, without

more, proof enough to show that the Agency acted with retaliatory intent."), rev'd on other

grounds sub nom., Porter v. Shah, 606 F.3d 809 (D.C. Cir. 2010).  Accordingly, because the

plaintiff's only other arguments regarding retaliatory motive assert generally that a causal

connection exists, see Pl.'s Mot. at 20, 26, 31, 36—conclusory statements that the Court has

already rejected as insufficient to establish an inference of discriminatory intent, see supra

Section III.A.1—the Court concludes that any temporal proximity the plaintiff has advanced,

"without more," Drewrey, 763 F. Supp. 2d at 64, is not "sufficient evidence for a reasonable jury

to find that the employer's asserted [ ] non-retaliatory reason[s] w[ere] [pretextual,]" Walker,

798 F.3d at 1092 (internal quotation marks omitted).[9]

---

[9] The plaintiff also argues that the defendant's inclusion of her comments to Ms. Ricci in the document proposing the plaintiff's fourteen-day suspension in 2017, that "[the plaintiff] told Ms. Ricci she 'was a racist and discriminating against [her] because of [her] race and age[,]'" Pl.'s Mot. at 25, as well as "[t]he Agency's citation to allegations of discrimination in the [p]roposal and subsequent nine[-day] suspension [in 2015,] . . . ha[d] a chilling effect on [the plaintiff's] EEO activities and, pursuant to Odilia, constitute per se retaliation[,]" id. (citing Odilia M. v. McDonald, EEOC DOC 0120150311, 2016 WL 6903575, at *5–6 (E.E.O.C. Nov. 3, 2016)).  However, the

(continued . . .)

### 3. Hostile Work Environment Claims

The Court now turns to the plaintiff's argument that she "is entitled to summary judgment because she was subjected to a hostile work environment based on her race, sex, and for engaging in protected EEO activity[.]"  Pl.'s Mot. at 34.  In support of this claim, the plaintiff states that she "suffered harassment from Ms. Ricci and Ms. Dinh over the course of several years[,]" which she reported "on various occasions[.]"  Id. at 35.  In response, the defendant argues that "[the p]laintiff fails to demonstrate that her hostile work environment claims were based on her protected status[,]" Def.'s Mem. at 25, "fails to point to any other evidence in the record that she suffered from a hostile work environment[,]" id. at 26, and "cannot bootstrap discrete acts of discrimination and retaliation into [ ] hostile work environment [claims][,]" id. at 27.

To state a hostile work environment claim, a plaintiff must allege "'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the [plaintiff]'s employment and create an abusive working environment.'"  Baloch, 550 F.3d at 1201 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  In evaluating a plaintiff's allegations, courts must consider "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

---

defendant's statements regarding what the plaintiff said about Ms. Ricci are either completely absent, see generally Def.'s Mot., Ex. L (Proposed Five (5) Day Calendar Suspension), ECF No. 70-15, or referenced only briefly as part of a neutral summary of the related verbal altercations that occurred leading up to the suspensions, see id., Ex. O (November 2015 Suspension Decision) at 1 (stating that "[the plaintiff] claimed that Ms. Dinh did not take action until [the plaintiff] raised concerns about discrimination"); id., Ex. R (Proposed Fourteen (14) Day Calendar Suspension) at 2, ECF No. 70-21 (mentioning the plaintiff's allegations of discrimination as part of a summary regarding her altercation with Ms. Ricci); id., Ex. U (June 2017 Suspension Decision) at 2 (describing the plaintiff's comments during her altercation with Ms. Ricci), in those documents.  Accordingly, the Court finds that these descriptions of the plaintiff's comments regarding discrimination, which were merely incidental as part of a summary of events leading up to her suspensions, do not rise to the level of creating a "chilling effect on the EEO process[,]" Odilia M., 2016 WL 6903575, at *6, and therefore do not constitute "per se retaliation[,]" id.

performance."  Harris, 510 U.S. at 23; see also Faragher v. City of Boca Raton, 524 U.S. 775,

788 (1998) ("These standards for judging hostility are sufficiently demanding to ensure that Title

VII does not become a general civility code. Properly applied, they will filter out complaints

attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive

language, gender-related jokes, and occasional teasing."  (internal citation and quotation marks

omitted)).  "Except in extreme circumstances, courts have refused to hold that one incident is so

severe to constitute a hostile work environment."  Stewart v. Evans, 275 F.3d 1126, 1134 (D.C.

Cir. 2002) (citations omitted).  "Even a few isolated incidents of offensive conduct do not

amount to actionable harassment."  Id.

     Here, in support of her hostile work environment claims, the plaintiff references three

discrete incidents: (1) "[i]n May 2015, in her reply to a proposed letter of reprimand, [the

plaintiff] . . . requested that the Agency 'take prompt and effective action to correct hostile work

environment to which she [was] being subjected[,]" and "no one took any type of corrective

action[,]" Pl.'s Mot. at 22; (2) "Dinh harassed the [p]laintiff" by sending "two separate

memoranda sent by first class US Mail, certified mail[,] and UPS to her home address[,]" and

"contact[ed] the [p]laintiff, [in] violat[ion of] the Privacy Act, . . . by accessing her personnel file

to obtain her home address[,]" id.; and (3) "when the [p]laintiff requested sick leave, Dinh denied

the sick leave unless the [p]laintiff worked while suspended[,]" id.  Even accepting the truth of

these allegations, they are not "sufficiently severe or pervasive" such that they "alter[ed] the

conditions of the [plaintiff]'s employment and create[d] an abusive working environment."

Harris, 510 U.S. at 21.  Rather, these incidents are more appropriately characterized as sporadic,

"unpleasant experiences at work[,]" Whorton v. Wash. Metro. Area Transit Auth., 924 F. Supp.

2d 334, 349 (D.D.C. 2013) (dismissing a claim of hostile work environment based upon the

plaintiff's race where the asserted incidents involved repeated non-selections and denial of

training), or even at best "harsh, unjust, or rude[,]" Nurriddin v. Goldin, 382 F. Supp. 2d 79, 107

(D.D.C. 2005) (dismissing a hostile work environment claims based upon the plaintiff's race

where the plaintiff alleged the existence of an icon found on a work computer that included racist

overtones), conduct by the defendant.  Therefore, these types of incidents do not satisfy the

"demanding" standards for establishing a hostile work environment claim, which is designed "to

ensure that Title VII does not become a 'general civility code for the American workplace.'"

Whorton, 924 F. Supp. 2d at 349 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S.

75, 82 (1998)).

      "It is not enough for [the] plaintiff to show that [the defendant] was 'harsh, unjust, or

rude[;]' rather, the plaintiff must offer some evidence that the hostility was the product of

discriminatory animus." Husain, 2021 WL 663206, at *13 (quoting Nurriddin, 382 F. Supp. 2d

at 107); see Peters v. District of Columbia, 873 F. Supp. 2d 158, 189 (D.D.C. 2012) ("It is [ ]

important in hostile work environment cases to exclude from consideration personnel decisions

that lack linkage of correlation to the claimed ground of discrimination.").  Here, the plaintiff has

not provided any evidence of discriminatory animus, beyond conclusory statements, as support

for her hostile work environment claims.  See generally Pl.'s Mot. at 21–23, 34–35.  And, to the

extent that the plaintiff relies on previously articulated arguments regarding discrimination and

retaliation as support for her generalized and conclusory statements that "she was subjected to a

hostile work environment based on her race, sex[,] and for engaging in protected EEO

activity[,]" id. at 34, the Court agrees with the defendant that the plaintiff may not "bootstrap

[her] alleged discrete acts of retaliation [or discrimination] into a broader hostile work

environment claim[,]" Baloch v. Norton, 517 F. Supp. 2d 345, 364 (D.D.C. 2007).  See Def.'s

Mem. at 25–28; <u>Lester v. Natsios</u>, 290 F. Supp. 2d 11, 32 (D.D.C. 2003) ("[I]t is not at all clear

that mere reference to alleged disparate acts of discrimination against [the] plaintiff can ever be

transformed, without more, into a hostile work environment claim.").  Accordingly, because the

plaintiff has failed to allege "'discriminatory intimidation, ridicule, and insult' that is

'sufficiently severe or pervasive[,]'" <u>Baloch</u>, 550 F.3d at 1201 (quoting <u>Harris</u>, 510 U.S. at 21),

to amount to a hostile work environment, and has also failed to provide "some evidence that the

[claimed] hostility was the product of discriminatory animus[,]" <u>Husain</u>, 2021 WL 663206, at

*13, the Court concludes that a reasonable jury could not find that the plaintiff's work conditions

amounted to a hostile work environment.

**B.      The Plaintiff's Claim that the Agency Committed a Prohibited Personnel Action**

The plaintiff also argues that she is entitled to summary judgment because "[t]he two

removal actions against the [p]laintiff were prohibited personnel actions and were taken in

retaliation for [her] protected whistleblower disclosures[,]" Pl.'s Mot. at 10, namely, "the

[p]laintiff raising concerns about at least six USDA supervisors violating the Antideficiency

Act[,]" <u>id.</u> at 11.  <u>See</u> Am. Compl. ¶ 228 (alleging in Count IV that "[the d]efendant USDA

unlawfully committed a [p]rohibited [p]ersonnel [a]ct in violation of 5 U.S.C. § 2302(b)(8)

against [the p]laintiff [ ] when it removed her from federal service on the basis of her protected

disclosure of activity in the form of potential violations of the Anti-deficiency Act and the

[Internal Revenue Service (']IRS['')] Code").  Regarding the MSPB decision which affirmed the

plaintiff's removal, <u>see</u> Def.'s Mot., Ex. B (Initial Decision ("MSPB Decision")) at 43, ECF No.

70-5, the defendant argues in response to the plaintiff's motion that he is entitled to summary

judgment on this claim "because the MSPB administrative judge's decision was not arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law or unsupported by substantial evidence[,]" Def.'s Mem. at 18–19.

District courts review decisions of the MSPB according to two different standards, depending on whether the decision being challenged is based on discrimination/retaliation or a non-discrimination factor.  Specifically, "court[s] reviews [ ] discrimination and retaliation claims de novo and reviews the non-discrimination claims on the administrative record." Robinson v. Duncan, 775 F. Supp. 2d 143, 157 (D.D.C. 2011) (citing Hanna v. Herman, 121 F. Supp. 2d 113, 117 (D.D.C. 2000)).  As to non-discrimination claims, "an MSPB decision 'must be affirmed unless it is found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence.'"  Hanna, 121 F. Supp. 2d at 121 (quoting Hayes v. Dep't of the Navy, 727 F.2d 1535, 1537 (Fed. Cir. 1984)). Furthermore, in evaluating whether an MSPB decision was supported by substantial evidence, "a court is limited to determining 'whether the agency . . . could fairly and reasonably find the facts that it did,' and '[a]n agency conclusion may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view.'"  Rountree v. Johanns, 382 F. Supp. 2d 19, 32 (D.D.C. 2005) (quoting Robinson v. Nat'l Transp. Safety Bd., 28 F.3d 210, 215 (D.C. Cir. 1994)).  And, to the extent that an administrative judge's determinations are based upon credibility assessments, such determinations are "'virtually unreviewable[ ]' and a plaintiff's de facto request for the Court to 're-weigh conflicting evidence' is inconsistent with the reviewing court's function."  Id. (quoting Bieber v. Dep't of the Army, 287 F.3d 1358, 1364 (Fed. Cir. 2002)).  Here, although the plaintiff's MSPB claim appears to be limited to the administrative judge's determinations regarding one of her

discrimination-related claims, i.e. retaliation, see Am. Compl. ¶ 228, she also makes arguments in her motion regarding non-discrimination claims, see Pl.'s Mot. at 1–6 (arguing that the plaintiff's removal was time-barred, barred by collateral estoppel, and prohibited by the CBA appeals procedures); id. at 7–8 (stating that the performance standards the plaintiff was subjected to as part of the performance plan were "arbitrary and capricious" because her supervisors "made various claims that the [p]laintiff didn't provide them with legal analysis[,]" but "[t]he term legal analysis was defined differently by different employees of the [d]efendant").  Accordingly, the Court will review both the non-discrimination and discrimination claims.

First, as to the plaintiff's non-discrimination claims, the administrative judge "thoroughly reviewed and evaluated all of the evidence presented at the [plaintiff's] hearing," and issued a lengthy "analysis and [ ] weighing of evidence, including . . . the credibility of witnesses[.]" Robinson, 775 F. Supp. 2d at 157; see Def.'s Mot., Ex. B (MSPB Decision) at 2–23; see, e.g., id. at 8 n.5 (performing a credibility evaluation as to one of the defendant's witnesses).  Specifically, regarding the plaintiff's claims that "her performance was not unacceptable[,]" Def.'s Mot., Ex. B (MSPB Decision) at 2, that "the [A]gency denied her a meaningful opportunity to improve because her assignments were vague, arbitrary, and had unreasonable deadlines[,]" id., and that "the [A]gency did not give her constructive guidance or feedback[,]" id., the administrative judge conducted a twenty-one-page evaluation of the performance plan itself, as well as the defendant's conduct while the plan was in effect, see id. at 2–23.  The administrative judge grappled with the standards of review and examined the validity of the reasons for the plaintiff's unacceptable performance provided by the defendant, as well as the plaintiff's responses and arguments regarding the defendant's actions, see id., ultimately concluding that "the [A]gency established by substantial evidence that the [plaintiff's] performance was unacceptable in Critical

Elements 1, 2, and 3[,]" id. at 21.  Furthermore, the administrative judge concluded that the "[performance plan] was detailed and clearly described the [plaintiff's] performance deficiencies[,]" id. at 22, including that the plaintiff was "warned . . . of her performance inadequacies and g[iven] [ ] a reasonable opportunity to improve[,]" id. at 23.

As to the plaintiff's non-discrimination claims regarding procedural harm, see Pl.'s Mot. at 1–6 (arguing that her removal was time-barred, barred by collateral estoppel, and prohibited by the CBA appeals procedures), before the MSPB the plaintiff bore the burden of showing that any alleged procedural error "caused substantial harm and prejudice to her rights."  5 C.F.R. § 1201.4(r); see id. (defining harmful error as "[e]rror by the agency in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one that it would have reached in the absence").  In evaluating the plaintiff's claim that her removal violated CBA appeals procedures,[10] the administrative judge found that "the [A]gency met its obligation under the CBA to meet with the [plaintiff] and the union to discuss her [performance plan,]" and "that even if the meeting did not satisfy the agency's obligation [ ], . . . the [plaintiff] has failed to demonstrate how she was harmed by such a failure[,]" given that the "the [A]gency tailored the [performance plan] to address the [plaintiff's] performance deficienc[ies]."  Def.'s Mot., Ex. B (MSPB Decision) at 24.  Thus, the administrative judge "thoroughly reviewed each of [the] plaintiff's arguments and reasonably concluded that [the] plaintiff did not meet her burden of demonstrating that any procedural errors resulted in substantial harm or prejudice." Robinson, 775 F. Supp. 2d at 158.  Accordingly, the Court concludes that "the [A]gency . . .

---

[10] To the extent that the plaintiff also contends that her removal was time-barred and barred by collateral estoppel, see Pl.'s Mot. at 1–6, she appears to raise these arguments for the first time in her motion for summary judgment, as the plaintiff did not allege these arguments in her complaint, see generally Am. Compl., or in her appeal to the MSPB, see generally Def.'s Mot., Ex. B (MSPB Decision).  Thus, the MSPB administrative judge did not have these arguments before her in rendering her decision.  And, "[i]t is well established that [a] plaintiff[] may not, through summary judgment briefs, raise new claims . . . not raise[d] [ ] in [the] complaint[,]" Quinn v. District of Columbia, 740 F. Supp. 2d 112, 130 (D.D.C. 2010), and therefore, the Court may not consider these arguments.

could fairly and reasonably find the facts that it did," Robinson, 28 F.3d at 215, and the MSPB's

conclusions on the plaintiff's non-discrimination claims were "supported by substantial

evidence[,]" Rountree, 382 F. Supp. 2d at 32.  See id. at 31–32 ("The non[-]discrimination

findings of the MSPB [a]dministrative [j]udge [ ] are reversible only if they were arbitrary or

capricious, obtained without lawful procedures, or were unsupported by substantial evidence.");

Robinson, 28 F.3d at 215 ("An agency conclusion may be supported by substantial evidence

even though a plausible alternative interpretation of the evidence would support a contrary

view.").  The Court therefore affirms the MSPB decision as to the plaintiff's non-discrimination

claims.

Second, regarding her discrimination claims, the plaintiff argues that her removal was

imposed "in retaliation for [her] protected whistleblower disclosures[,]" Pl.'s Mot. at 10, namely,

"the [p]laintiff raising concerns about at least six USDA supervisors violating the Antideficiency

Act[,]" id. at 11, and that the MSPB administrative law judge therefore erred in affirming her

removal.  The Court has already reviewed the plaintiff's discrimination claim predicated on

alleged retaliation de novo, see supra Section III.A.2, and determined that it lacks merit.  See

Robinson, 775 F. Supp. 2d at 158 (incorporating by reference its merits analysis of the plaintiff's

Title VII claims in resolving the plaintiff's discrimination claims regarding the MSPB decision);

Rountree, 382 F. Supp. 2d at 35 (same).  Accordingly, the Court also affirms the MSPB decision

regarding the plaintiff's discrimination claim.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must deny the plaintiff's motion for

summary judgment and grant the defendant's motion for summary judgment.

**SO ORDERED** this 5th day of December, 2022.[11]

REGGIE B. WALTON
United States District Judge

---

[11] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.